IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. VICARI, | No. C 09-5238 SI |
| Plaintiff, | **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS** |
| v. | |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | |
| Defendant. | |

The parties filed cross-motions for summary judgment on this Social Security appeal. Having considered the parties' papers and administrative record, the Court hereby DENIES both plaintiff's and defendant's motions for summary judgment, and REMANDS this case for a hearing on plaintiff's DAC eligibility.

**BACKGROUND**

**I. Procedural Background**

**A. Pre-Hearing Procedures**

On December 4, 2006, plaintiff filed two applications for social security benefits: one for Disabled Adult Child benefits ("DAC") under Title II of the Social Security Act[1] based on the earnings record of his father, AR 96; and another for Supplemental Security Income ("SSI") under Title XVI of

---

[1] Under the Social Security Act, persons qualify for DAC if they are a child of a person who is deceased or who is drawing Social Security disability or retirement benefits. The applicant only qualifies if they became disabled before age 22. *See generally* 42 U.S.C. § 402.

1  the Act.[2]  AR 89.

2  Plaintiff's initial application for DAC benefits stated that plaintiff became disabled on the date of filing, December 4, 2006, and therefore was not disabled prior to his 22 birthday. AR 96-97, 162. At a later date, plaintiff amended the onset date to allege continuous disability since before age 22 – the relevant statutory trigger for DAC. AR 162.[3]

Plaintiff's initial DAC application was denied on January 30, 2007, and reconsideration was denied on July 20, 2007. AR 50, 54, 55. On September 26, 20007, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on his DAC eligibility. AR 63.

Plaintiff's initial SSI application was denied on the technical ground that plaintiff had resources in excess of the $2,000 limit, because he was joint owner of his mother's IRAs. AR 17, 89-90. The plaintiff took no steps to appeal that denial. *See* AR 17-18.

### B. Hearing & Post Hearing Procedures

A hearing occurred before an ALJ on January 22, 2009. AR 17, 30-47. Plaintiff appeared at the hearing with counsel and testified. Although plaintiff requested a hearing only on DAC eligibility, there was confusion at the hearing, and plaintiff's counsel erroneously requested and the ALJ conducted a review of plaintiff's SSI eligibility. *Compare* AR 63 (hearing application) *with* AR 46 (hearing transcript) *and* AR 154 (pre-hearing written argument). At the end of the hearing, the ALJ found plaintiff entitled to SSI benefits due to "[s]evere impairments [from] anxiety related disorders, bi-polar, [and] obsessive compulsive disorder" recognized under listing 12.06 of 20 C.F.R. § 404, Subpt. P, App. 1. AR 46. Only after the ALJ announced a decision from the bench granting SSI benefits was it discovered that the hearing was supposed to address DAC benefits. AR 18.

---

[2] Disabled persons qualify for SSI if they meet specified income, asset, living arrangement and marital status qualifications. *See* 42 U.S.C. §§ 1381-1383f; 20 C.F.R. §§ 416.101-416.2227.

[3] Plaintiff's attorney requested amendment of the disability onset date to January 27, 1997, however, the ALJ's written decision and Notice of Appeals Council Action evaluated the onset for plaintiff's disability as of July 31, 2003. AR 1, 18, 22, 162.

Once the ALJ discovered the mix-up, the ALJ held a post-hearing conference off the record with plaintiff's attorney, to discuss "the possibility of holding the record open to fully evaluate, and if necessary, develop the record to assess disability prior to the [plaintiff's] 22nd birthday. In response, [plaintiff's] attorney submitted a post-hearing argument." AR 18.[4]

Plaintiff's post-hearing brief requested the ALJ find plaintiff entitled to DAC benefits. AR 159-62. The brief outlined plaintiff's medical history and requested the ALJ amend the onset date for plaintiff's disability to January 27, 1997. *Id.* Plaintiff's attorney attached exhibits including documentation of plaintiff's medical history, subjective descriptions of his impairments, and an April 2004 note from plaintiff's then-treating psychiatrist, Dr. Grossi, stating that his bipolar and obsessive compulsive disorder commenced "ten yrs ago." AR 163-506. Plaintiff never had a hearing before an ALJ that addressed his DAC eligibility.

The ALJ's February 3, 2009, written decision denied the DAC claim. AR 14-23. Because plaintiff's hearing request did not include an appeal of his SSI claim, the ALJ revoked his prior bench decision granting plaintiff SSI benefits for lack of jurisdiction. AR 18.

On September 8, 2009, the Appeals Council denied plaintiff's review request, making the February 3, 2009 decision the Commissioner's final decision on the DAC claim. Plaintiff then sought judicial review in the United States District Court.

## II. Factual Background

### A. Plaintiff's Personal and Medical History

Plaintiff was born in 1981. He dropped out of high school in 1996, but eventually earned a GED, and attended occasional community college classes. Pl.'s MSJ 3; AR 131. At the time of the ALJ hearing plaintiff was 27 years old, unmarried and had never worked. Pl.'s MSJ 3; AR 34. Plaintiff turned 22 on August 17, 2003. AR 34, 96.

Plaintiff alleges he has suffered from bipolar disorder and obsessive compulsive disorder

---

[4] The record contains no transcript of these post-bench decision discussions.

("OCD") since he was 15. The record supports a history of mental problems stretching back to his teenage years. *See, e.g.*, AR 21. Since 1997, plaintiff's psychiatric treatment has included numerous involuntary hospitalizations, partial hospitalizations, and regular outpatient monitoring.

In 1997, plaintiff was placed on a 72-hour hold, and described as gravely disabled. AR 174-75. His diagnosis included severe compulsive disorder with intermittent explosive disorder, and his 12-month prognosis was "fair." *Id.* Plaintiff consequently entered a partial hospitalization program. *Id.*

A February 1998 progress note indicates plaintiff was manic, and destroying things, especially glass. AR 199. Plaintiff appears to have shown improvement thereafter, until November 1999. AR 214-15. In November and December 1999, plaintiff appeared more depressed. AR 214. Dr. Grossi noted improvement from January until June 2000. AR 213.

On June 24, 2000, Plaintiff was hospitalized after brandishing a knife and accusing his father of trying to kill his mother. AR 310-11. Plaintiff admitted he had stopped taking his medication a few days prior. AR 310.

Doctor's notes indicate continued depression, OCD behaviors and obsessive thoughts from July 2000 into January 2001. AR 211-12. After a lull, Dr. Grossi again noted a large number of OCD symptoms from May of 2001 through January 2002. AR 209-12. A February 2002 note states plaintiff was "doing really well [in] the last few weeks," but a March 2002 note says plaintiff was "doing poorly." *Id.* From June until September 2002 plaintiff received positive and sometime "excellent" reports. AR. 208.

In October 2002, plaintiff had a "tantrum" involving "obsessive thoughts" in which he "destroyed his computer." AR 207.

Shortly after that incident, Dr. Grossi observed that plaintiff was considerably more relaxed. AR 207. Positive comments continued through April of 2003, and from May through July of 2003, Dr. Grossi writes that plaintiff achieved "excellent results." AR 205-06. In July 2003, plaintiff talked to Dr. Grossi about looking for work. AR 205. Shortly before plaintiff's 22nd birthday, a note from August 11, 2003 indicates plaintiff is attending OCD meetings, and "doing very well." AR 204. In

4

1 September 3, 2003, Dr. Grossi notes that plaintiff continues to experience "severe OCD symptoms" but
2 was otherwise in good control of his depression and experiencing "extraordinary results." AR 203. An
3 October 3, 2003 note indicates plaintiff is doing about the same. AR 202.

4 In 2004, plaintiff attempted to overdose on his medication twice – once in the spring and once
5 in the summer of that year. AR. 275-76, 280. A doctor's note from that summer indicates that
6 plaintiff's suicidal thoughts came after plaintiff began part-time volunteer work. *Id.* Leading up to his
7 second hospitalization plaintiff told the doctor that he "had largely settled on a plan to drop out of [the]
8 volunteer/job search and take an overdose of his lithium and Anafranil, but this time be successful."
9 AR 275-76. He was hospitalized again for suicidal ideation in 2005, 2006 and 2008. AR 239-41, 106,
10 485.[5]

### B. ALJ's Findings

Based primarily on plaintiff's post-hearing brief, the ALJ found that while plaintiff satisfied some elements required for DAC eligibility, he failed to meet his burden to show he was under a disability on or before his twenty-second birthday. AR 18-23. The ALJ made the following findings:

1. The claimant is the child of a wage earner, is considered to have been dependent on the wage earner at the appropriate time, is unmarried, and is at least 18 years of age.

2. The claimant has never engaged in substantial gainful activity (20 CFR 404.1571 *et seq.*).

3. Prior to his 22nd birthday, the claimant was diagnosed with Bipolar disorder and Obsessive Compulsive disorder. **But these impairments were not severe on or before August 17, 2003** (20 CFR 404.1520(c)).

. . .

4. **The claimant was not under a disability, as defined in the Social Security Act, at any time prior to the date he attained 22** (20 CFR 404.1520(c)). As of November 2006, the [ALJ] finds that the claimant would meet the medical requirements for disability under listing 12.06 [Anxiety-related disorders] in the

---

[5] Overall the record shows plaintiff was hospitalized due to suicidal ideation and for presenting a harm to himself and others in 1997, 2000, 2004 (twice), 2005, 2006, and 2008. *See* AR 172, 310-11, 280, 271, 275-76, 239-41, 106, 416, 420, 494.

5

1	Code of Federal Regulations.

2 AR 20, 22 (emphasis added).

3 The ALJ found that although plaintiff's medically determinable impairments could reasonably
4 be expected to produce symptoms alleged in the record, evidence was insufficient to establish disability
5 "by August 16, 2003, the day before his attainment of age 22." AR 22. While the ALJ acknowledged
6 "some isolated incidents of mental disturbance recorded in the treatment notes, . . . at a <u>much earlier</u>
7 <u>period of time (1997-2001)</u>," he noted "the claimant's behavior was well controlled by medication, and
8 he seemed to be making positive progress with treatment." AR 22. The ALJ also acknowledged
9 plaintiff's allegations that by the time he turned 22, he was being treated with medications for Bipolar
10 Disorder and OCD, that he performed poorly in a class taken at community college, and was
11 unemployable and not likely to find work. AR 22, 131. In response, the ALJ pointed to progress notes
12 from nine medical treatment visits <u>from April 2, 2002 through July 3, 2003</u>, which the ALJ characterizes
13 as a period of excellent progress. AR 22 (citing AR 205-08). The ALJ pointed to a July 3, 2003 note
14 that said plaintiff was talking about future work.

15 The ALJ also found "very little evidence" to substantiate plaintiff's subjective complaints of
16 disability. While plaintiff described being "in a fog from all the pills," the ALJ found no support for
17 this allegation," in "objective medical evidence" within the record AR 22.

18 The ALJ denied plaintiff's claim, concluding that although plaintiff suffered from bipolar and
19 obsessive compulsive disorder before he turned twenty-two, these impairments were not "severe" at the
20 time plaintiff turned 22. *Id.* However, the ALJ was convinced that plaintiff's impairments were
21 "severe" as of November 2006. *Id.*

## LEGAL STANDARD

### I.	Standard Of Review

25 A district court's review of a disability determination is limited, and a final administrative
26 decision may be altered "only if it is based on legal error or if the fact findings are not supported by

6

substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs.,* 726 F.2d 1470, 1473 (9th Cir. 1984).

The reviewing court has discretion to remand a case for further evidence, or to award benefits. *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 926 (9th Cir. 2002). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

**II.      Disabled Adult Child Benefits**

The primary purpose of social security schemes aimed at children is to provide support for dependents. *See Doran v. Schweiker*, 681 F.2d 605, 607 (9th Cir. 1982); *Jimenez v. Weinberger*, 417 U.S. 628, 634 (1974). Under Title II of the Social Security Act, a disabled adult whose parent is entitled to Social Security retirement benefits may himself receive childhood disability benefits if, *inter alia*, he can demonstrate that at the time of filing for child's insurance benefits, he was unmarried, dependant on the wager-earner parent, and "is under a disability . . . which began before he attained the age of 22." 42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350; Soc. Sec. Admin, Program Operation Manual System ("POMS DI") 10115.001.

The Ninth Circuit has held that "the claimant must be disabled *continuously and without interruption* beginning before [his] twenty-second birthday until the time [he] applied for child's disability insurance benefits." *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996) (emphasis in original). An intervening period of apparent non-disability may defeat a DAC claim. *See* POMS DI

7

10115.001.

The ALJ reached his decision at step three of a five-step sequential evaluation procedure for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); AR 20-23. This procedure dictates that the ALJ first consider whether the individual's work activity since turning 22, if any, constitutes "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I); 20 C.F.R. § 404.1571. At the second step, the ALJ considers the medical severity of the individual's impairment and whether the claimant has suffered from that impairment since before turning 22, among other factors. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1520a (relating to mental impairments). Unless the "impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months" to be considered severe. 20 C.F.R. § 404.1509; 42 U.S.C. § 1382c(a)(3)(A). At the third step, the ALJ again considers the medical severity of the impairment, to determine whether the impairment meets or equals one of a list of specific impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii).

**DISCUSSION**

Plaintiff seeks judicial review of the Commissioner of the Social Security Administration's final decision finding him not disabled. Plaintiff contends first, that substantial evidence does not support the Commissioner's actions, findings, and conclusions, and second, that the ALJ erred in failing to consider statements made by plaintiff's mother in the record. Pl.'s MSJ 2. The Court has jurisdiction to hear the DAC appeal. 42 U.S.C. § 405(g).[6]

On February 13, 2012, this Court, *sua sponte*, issued an order to show cause why the Court should not remand "to allow plaintiff to argue his case and for the ALJ to fully consider the evidence regarding the onset date of plaintiff's disability" in a hearing. Doc. No. 19. The parties filed timely

---

[6] Plaintiff requests judicial review of his application for SSI benefits, but like the ALJ, the Court declines on jurisdictional grounds. Compl. 2. The Court reviews "final decision[s] of the Commissioner of Social Security." 42 U.S.C. § 405(g). Plaintiff did not exhaust administrative remedies for the SSI application, so there is no final agency decision to review. *Id.*; 20 C.F.R. §§ 404.981, 416.1481.

8

responses which did not address the Court's concern whether plaintiff received the process he is due. Doc. Nos. 20, 21. The Court declines to reach the parties' arguments for summary judgment, because the Court determines that the ALJ erred in failing to provide plaintiff with a hearing on his DAC claim.

Plaintiff has a statutory right to a hearing regarding the denial of his application for social security benefits. 42 U.S.C. § 405(b)(1); 42 U.S.C. § 421(d) (claimants "shall be entitled to a hearing"); SSR 79-19; *Sims v. Harris*, 631 F.2d 26, 27 (4th Cir.1980) ("Claimants . . . are entitled to a full and fair hearing of their claims, and the failure to have such a hearing may constitute good cause sufficient to remand."). The right to a hearing includes the right to a determination based on "evidence adduced at the hearing." 42 U.S.C.A. § 405. Plaintiff may waive his right to a hearing, however, he or his representative must do so in writing subject to certain requirements. SSR 79-19.[7]

While plaintiff does not request the Court consider the issue, failure to hold a hearing on plaintiff's eligibility for DAC benefits raises the concern that plaintiff did not get the process to which he is statutorily entitled. Plaintiff requested a hearing on DAC benefits, but got a hearing on the un-appealed denial of SSI benefits. AR 46, 63. The mix-up was discovered after the hearing. AR 17-18. In post-hearing discussions, which are not in the hearing transcript, the ALJ and plaintiff's attorney resolved to allow the submission of a post-hearing briefing. AR 18. The ALJ then based his adverse decision primarily on that post-hearing evidence. AR 17-23.

The ALJ's written decision in this case is akin to a decision on-the-record ("OTR"). An OTR is a decision based on the record before the ALJ, without a hearing. 20 C.F.R. § 404.498. An ALJ may only issue an OTR where the decision is wholly favorable to the claimant or if the parties provide a written waiver of their right to appear and testify. *Id.*; AR 17-18, 160-62; *see also* Soc. Sec. Admin., Off. of Disability Adjudication and Review, Hearings, Appeals & Litigation Law Manual ("HALLEX") I-2-1-45 (F); HALLEX I-2-1-65.

---

[7] The writing must also show plaintiff received an explanation of the: "hearing procedure"; "right to personal appearance at the hearing to testify and present evidence"; "right to representation at the hearing"; value of "evidence obtained thorough [sic] oral testimony and personal presence before the presiding officer" to the evaluation of the issues; fact that "the claim will be decided solely on . . . evidence then in file plus any additional evidence submitted"; and right to withdraw waiver. *Id.*

9

Here, the ALJ based his decision primarily on the post-hearing record. However, the ALJ failed to meet either condition that permits an OTR. First, the ALJ's decision was clearly unfavorable to the plaintiff. Second, there is no indication plaintiff waived his right to a hearing on DAC in writing after the error was discovered. *See* AR 17-18, 160-62; *see also Hein v. Astrue*, No. CV-08-3030, 2009 WL 57490, at *1, 4-5 (E.D.Wash. 2009) (holding the ALJ failed to provide a full and fair hearing where the ALJ cut the hearing short after he decided an updated psychological evaluation was necessary to the determination and indicated a supplemental hearing would likely occur at a later date, but thereafter issued an unfavorable determination without first obtaining a written waiver from claimant of claimant's right to a supplemental hearing). The judge's now revoked bench decision finding plaintiff mentally disabled under a 12.06 impairment as of 2006 hearing heightens the Court's concern that any waiver be clear and appropriate.

The Court finds that remand is appropriate here to allow plaintiff to argue his case and for the ALJ to fully consider the evidence regarding the onset date of plaintiff's disability.[8] Since the ALJ found that Plaintiff was disabled as of the late-2006, the key issue before the Social Security Administration was whether Plaintiff has been continuously disabled since before age 22. *See* 42 U.S.C. § 423(d)(1)(A). It is possible, though not certain, that further hearing could change the ALJ's determination. This is especially so because evidence in the record casts doubt on some of the ALJ's conclusions. For example, the ALJ concluded that prior to plaintiff's twenty-second birthday in 2003, the record only shows incidents of mental disturbance from 1997-2001 and that plaintiff's treatment notes from April 3, 2002 through July 3, 2003 "consistently indicated plaintiff was making excellent progress." AR 22. However, an April 2004 note from plaintiff's psychiatrist stating that plaintiff's bipolar and obsessive compulsive disorder commenced "ten yrs ago." AR 506. The record also

---

[8] Case law indicates an ALJ's duty to fully develop each case is enhanced where a claimant is mentally handicapped. *Cf. Kirk v. Sullivan*, 761 F. Supp. 58, 62 (N.D. Ill. 1991) (holding that where ALJ himself noted claimant's mental unstable mental condition, he had an obligation to question whether oral waiver of hearing was a product of mental illness and whether it impaired her ability to present he claim); *Bosquet v. Apfel*, 118 F. Supp. 2d 1049 (C.D. Cal. 2000) ("The ALJ's duty to develop the record is heightened when a claimant's ability to protect his or her interest is adversely affected by a mental impairment.").

includes a seemingly relevant incident that occurred in late 2002, in which plaintiff destroyed his computer, AR 207, in addition to numerous doctor's notes that call into question the extent and duration of plaintiffs "progress" during the relevant period, *see infra* Part II.A. Such evidence was not directly addressed in the ALJ's written opinion. Remand for a hearing on DAC benefits would allow to ALJ to fully evaluate and develop the record. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES both plaintiff's and defendant's motions for summary judgment, and REMANDS this case for a hearing on plaintiff's DAC eligibility.

**IT IS SO ORDERED.**

Dated: March 8, 2012

SUSAN ILLSTON
United States District Judge